UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA J. BEASTERFIELD,

      Plaintiff,

v.                                     Case No.: 8:12-CV-2886-T-17EAJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social
Security Administration,

      Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title

42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision

of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental

Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the

Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda

submitted by the parties in this case, the Court recommends reversal of the Commissioner's decision

and remand for further administrative proceedings.[2]

In an action for judicial review, the reviewing court must affirm the decision of the

Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for
Michael J. Astrue, former Commissioner of Social Security.  See Fed. R. Civ. P. 25(d).

[2] The district judge referred this matter to the undersigned for consideration and a Report
and Recommendation.  See Local Rule 6.01(a), M.D. Fla.

applicable legal standards.  See 42 U.S.C. § 405 (g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).   If there is substantial evidence to support the Commissioner's findings, the reviewing court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On December 1, 2009, Plaintiff filed her application for SSI, alleging disability beginning on June 19, 1975. (T 31)  Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on March 17, 2011. (T 31)  Fifty-four (54) years old at the time of the hearing, Plaintiff has a twelfth grade education and past relevant work experience as a kennel attendant. (T 39, 48, 64)

On May 12, 2011, an ALJ denied Plaintiff's application. (T 40)  The ALJ found that Plaintiff's severe impairments included lumbar spine degenerative disc disease with only mild to moderate bulging discs and stenosis. (T 33) While these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T 35)  Plaintiff had the residual functional capacity ("RFC") to perform light work subject to the following restrictions:

Plaintiff's ability to stand or walk is limited to two to four hours total in an eight hour day; she can only occasionally balance on uneven surfaces, kneel, or crawl; and can never climb long ladders, scaffolds, ropes, or at open heights; Plaintiff should avoid extreme temperatures and cannot perform work involving frequent reading or writing. (T 35-36)

The ALJ found that Plaintiff was able to perform her past relevant work as a kennel attendant as she actually performed it. Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant time period. (T 39-40)  On October 23, 2012, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-3)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

In challenging the ALJ's decision, Plaintiff claims the ALJ should have found that Plaintiff had additional severe impairments, that the ALJ failed to give proper weight to the opinions of treating physicians and lay witnesses, that the ALJ failed to properly evaluate Plaintiff's credibility, that the testimony of the Vocational Expert ("VE") did not support the ALJ's conclusion that Plaintiff is capable of performing past relevant work, and that the ALJ erred by failing to apply the Grids and find Plaintiff disabled at step five of the evaluation process.

A.    Plaintiff contends the ALJ failed to properly determine all of Plaintiff's impairments as severe.  In Plaintiff's application for SSI, Plaintiff originally claimed that she was disabled due to asthma, arthritis in her back, and depression. (T 150).  At the hearing, Plaintiff also described complaints of pain in her right knee, numbness in her arms and hands, daily migraine headaches, a torn cornea in her right eye causing loss of sight in that eye, and Plaintiff stated that she falls down

several times each day due to her vision problems. (T 62, 66-68)  The ALJ found that Plaintiff's severe impairments were limited to lumbar spine degenerative disc disease with only mild to moderate bulging discs and stenosis and that the rest of Plaintiff's impairments were non-severe. (T 33)

To be considered disabled, a claimant must have a severe impairment.   20 C.F.R. § 404.1520(c) (2010).  A severe impairment is one that significantly limits the claimant's ability to perform basic work activities.  Id.  Basic work activities are those abilities and aptitudes necessary to do most jobs; for example, the ability to walk, stand, sit, lift, and carry out simple instructions. 20 C.F.R. § 404.1521(b) (2010).  An impairment can be considered not severe only if it is "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam).  An ALJ's conclusion that an impairment is not severe must be supported by substantial evidence.  Id. at 921.  The severity of an impairment must be measured "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

Citing an MRI examination dated October 11, 2010, Plaintiff contends the ALJ should have found her impairments of bulging discs and stenosis severe rather than mild to moderate. (T 431) Plaintiff asserts that the radiologist noted mild effacement of the interior spinal cord - objective evidence of pressure on the spinal cord - which Plaintiff alleges was not noted in the ALJ's opinion. However, the ALJ clearly considered the radiologist's opinion, specifically mentioning the October 11, 2010 MRI and including the radiologist's final impression in the medical review: "mild broad-

based disc osteophyte complexes and facet hypertrophy from C3 - C4 and C6 - C7 resulting in neural structural compromise, most pronounced at the C4 - C5 and C5 - C6 levels." (T 34, 431)  The radiologist also indicated that the MRI supported no acute findings. (T 431)  Therefore, substantial evidence supports the ALJ's determination that any impairment of Plaintiff's cervical spine was non-severe.

Regarding the ALJ's stenosis determination, Plaintiff asserts the ALJ should have found her stenosis was severe, rather than mild to moderate.  However, Plaintiff has cited no authority requiring the ALJ to describe the particular level of severity of the severe impairments determined in his findings.  While indicating the severity of the stenosis as mild to moderate, the ALJ still included Plaintiff's stenosis as a severe impairment for purposes of Plaintiff's SSI application. (T 33)

Next, Plaintiff asserts that her fatigue is a severe impairment. The ALJ considered Plaintiff's allegations of low energy, along with her mental health impairments; while Plaintiff testified to staying in bed seventy-five percent of the day, she indicated the reason for staying in bed was to relieve pain, not fatigue. (T 64)  Plaintiff also complained of daily migraine headaches, indicated she was on medication for migraine headaches, and asserted that her migraines, in combination with other impairments, would have more than a minimal effect upon her ability to work. (T 68, 435)  The ALJ considered Plaintiff's complaints of migraine headaches in his opinion, but noted that the report of Robert Shefsky, M.D., ("Dr. Shefsky") regarding Plaintiff's consultative examination indicated a neurological examination was unremarkable.  Plaintiff did not even mention the migraine headaches to Dr. Shefsky and he did not diagnose them. (T 34, 330-33)  Substantial evidence supports the ALJ's determination that any impairment related to fatigue or migraine headaches would have such minimal effect on Plaintiff that they would not be expected to interfere with her

5

ability to work and are therefore non-severe.

Finally, Plaintiff asserts that the tear in her cornea is a severe impairment.  However, by imposing limitations on Plaintiff's RFC such as limiting daily reading and writing and avoiding scaffolds, ladders, ropes, or open heights, the ALJ considered Plaintiff's visual impairment in his determination. (T 36)  Plaintiff does not indicate what further limitations the ALJ should have imposed for her vision impairment.

Plaintiff fails to cite any persuasive evidence that these impairments, alone or in combination with other impairments, limited her ability to perform basic work activities.  Substantial evidence supports the ALJ findings of Plaintiff's severe and non-severe impairments.  Additionally, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison, 814 F.2d at 588.  Here, the ALJ reviewed the medical record, found severe impairments at step two, then appropriately continued on to the next step in the SSI sequential evaluation process.

**B.**     Next, Plaintiff alleges that the ALJ inappropriately discounted the opinions of her treating physician and lay witnesses.

1. Opinions of the Treating Physicians

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted).  The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted). A treating physician's opinion must be given "substantial or considerable weight" unless there is

good cause to disregard the opinion. <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted).  Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. <u>Id.</u> at 1179 (citation omitted).  The ALJ must clearly articulate the reasons for according less weight to the findings of a treating physician and failure to do so constitutes reversible error. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). Ultimately, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985) (citations and internal quotation marks omitted).

Plaintiff asserts that the opinions of her treating physician, Dr. Jeng Y. Lin, M.D., support her allegations of disability, particularly with regard to her neck and low back problems and a lifting restriction of five pounds.  The ALJ explained that he gave Dr. Lin's opinion little weight in part because Dr. Lin's opinion could not be "objectively verified by the medical evidence in [the] record." (T 39)  While the record contains some treatment records from Dr. Lin, and the ALJ acknowledged Dr. Lin's treatment of Plaintiff (T 33), the record does not actually contain an opinion or statement submitted by Dr. Lin regarding Plaintiff's impairments or ability to work; the only evidence of a five pound lifting restriction is Plaintiff's testimony at the hearing, where she testified that the restriction was imposed by a Dr. Lee. (T 58-59, 429-37)[3]  Also, the ALJ found Plaintiff's allegations contradicted Dr. Lin's records. (T 39)

---

[3]  The reference to "Dr. Lee" could be a typographical error.  In any event, it is harmless error because no opinion, whether from Dr. Lin or a Dr. Lee, supports a finding that Plaintiff has a five pound lifting restriction or more severe problems with her back and neck than the ALJ determined.

Plaintiff also asserts the ALJ improperly failed to address medical evidence provided by her treating primary care physician, Dr. Ujwala Iyyunni, M.D. ("Dr. Iyyunni").  But the record does not contain a statement or opinion from Dr. Iyyunni regarding Plaintiff's impairments or ability to work. Nevertheless, the record does contain treatment records from Dr. Iyyunni (T 339-88, 425-28), and the ALJ did acknowledge Dr. Iyyunni's long-term treatment of Plaintiff (T 33).

Accordingly, the ALJ had good cause to discount the functional limitations attributed to Dr. Lin and properly considered Dr. Iyyunni's treatment records.

2. Opinions of Lay Witnesses

The ALJ may consider the testimony of a claimant's family members or other lay witnesses as evidence of a claimant's feelings of pain and other subjective symptoms.  See Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam); see also, 20 C.F.R. § 416.913(d)(4) ("[W]e may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. . . . for example, spouses, parents and other caregivers[.]").

Statements from lay witnesses, including friends and relatives of the claimant, as well as the claimant herself, constitute valid impairment evidence that must be considered. See 20 C.F.R. § 404.1512(b)(3).  Such statements "cannot establish the existence of a medically determinable impairment. Instead . . . [such information] may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

In addition, it is incumbent on the ALJ to make credibility findings as to a claimant's testimony and any lay witnesses who testify for him. See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  The ALJ is not required to make a specific credibility finding as to lay witness

8

testimony if the ALJ's credibility finding as to the claimant sufficiently implies a rejection of lay witness testimony. See Osborn v. Barnhart, 194 F. App'x 654, 666 (11th Cir. 2006) (per curiam) (unpublished). Moreover, the credibility of witnesses is for the Commissioner to determine, not the courts. Ryan, 762 F.2d at 942 (citation omitted). Similarly, it is the Commissioner's responsibility to draw inferences from the evidence that are supported by substantial evidence. Davis v. Apfel, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citation omitted).

In this case, citing Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990), Plaintiff asserts that the ALJ improperly discredited the opinions of her lay witnesses. However, the Lucas court remanded the case to the Secretary and explained that the ALJ did not review lay witness testimony at all in his decision or give reasons for rejecting the lay witness opinions. Id.

In this case, the ALJ stated that he considered the statements of Jennie Bone and Linda Link. (T 39, 196-98, 238-40) These opinions were provided in the witnesses' responses to the Supplemental Third Party Pain Questionnaire. (T 196-98, 238-40) The witnesses did not testify at the administrative hearing. The ALJ explained that he did not give the opinions significant weight because they were not consistent with the preponderance of the medical observations and opinions in the record and since the witnesses were neither medically trained nor disinterested third parties. (T 39) Additionally, as explained further below, the ALJ conducted a proper credibility analysis of Plaintiff herself which sufficiently implies a rejection of lay witness evidence.

As the ALJ appropriately evaluated the opinion evidence, and the ALJ's decision to discredit such opinions is supported by substantial evidence, remand is not justified on this issue.

**C.**     Plaintiff claims the ALJ improperly evaluated Plaintiff's credibility by inappropriately applying the Eleventh Circuit "pain standard."

Subjective complaints are evaluated according to a three-part "pain standard" used to evaluate a claimant's testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition, or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).  If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).  A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).  However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

To satisfy the first of the pain standard elements, Plaintiff is required to show objective medical evidence of an underlying medical condition. Landry, 782 F.2d at 1553.  In making his credibility determination, the ALJ found that Plaintiff suffered from severe impairments, particularly lumbar spine degenerative disc disease with mild to moderate bulging discs and stenosis. (T 33) However, the ALJ found that while Plaintiff's medically determinable impairments could reasonably

be expected to cause the alleged symptoms, Plaintiff's statements about the persistence, intensity, and limiting effects of the alleged symptoms were not credible to the extent they conflicted with an RFC for light work subject to the restrictions outlined in the opinion. (T 36)

Plaintiff asserts the ALJ erred by discrediting her testimony based on the opinions of Dr. Robert Shefsky, M.D., and Dr. Thomas Renny, D.O. (T 37-39, 330-38, 403-10)  Regarding Dr. Shefsky's examination, the ALJ noted that Dr. Shefsky diagnosed Plaintiff with low back pain, right knee pain, high blood pressure, asthma, and emphysema.  Though Dr. Shefsky observed that Plaintiff had a moderately antalgic gait on the left, could not walk on her toes, could not do a full squat, needed help getting on and off the exam table, and used a walker, she could still walk on her heels, had a normal stance, and could rise from her chair with only mild difficulty.  Ultimately, Dr. Shefsky's opinion indicated Plaintiff was in no acute distress. (T 37, 331)  Though Dr. Shefsky did not have access to Plaintiff's subsequent MRIs at the time of his examination, he did review x-rays showing degenerative discogenic change in Plaintiff's lumbar spine, which was supported by the later MRI. (T 37, 332, 334, 431)

Regarding Dr. Renny's opinion, the ALJ noted that Dr. Renny formed his opinion after reviewing all of the medical evidence in this case. (T 37, 403)  Based on his review of the evidence, including Plaintiff's allegations of pain, Dr. Renny found Plaintiff had reduced range of motion in her lumbar spine and right knee, but had normal stance, normal grip strength and dexterity, and normal motor power except for the left lower extremity, which he found was a four out of five. Plaintiff could also frequently climb a ramp or stairs, occasionally balance, stoop, kneel, crouch, or crawl, and had no established manipulative, visual, or communicative limitations.  Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk at least two hours in an

eight hour work-day (basing such limitation on Plaintiff's lumbar spine disease), sit with normal breaks for a total of about six hours in an eight hour work-day, and her ability to push or pull was unlimited. Dr. Renny also indicated a walker was not medically necessary. As for environmental limitations, Dr. Renny indicated Plaintiff should avoid extreme temperatures, humidity, fumes, odors, dusts, gases, and poor ventilation, as well as avoid hazards such as machinery or heights. (T 403-408)

Citing <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) and <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988), Plaintiff asserts Dr. Renny's opinion should be given little weight since he was a non-examining physician. However, the ALJ may rely on a non-examining physician's opinion when it is consistent with the medical record and the treating and examining physicians' underlying clinical findings. <u>Flowers v. Comm'r of Soc. Sec.</u>, 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished).[4] <u>See also</u>, 20 C.F.R. § 416.927(e). As Dr. Renny's opinion is supported by the medical evidence in the record, the ALJ accorded appropriate weight to Dr. Renny's opinion.

The ALJ also articulated other reasons for discrediting Plaintiff's credibility regarding the disabling effect of her impairments. The ALJ noted that Plaintiff's allegations of falling multiple times per day were not noted in the record and could not be objectively verified; nevertheless, giving Plaintiff the benefit of the doubt, he allowed for Plaintiff's vision impairment in the restrictions included within Plaintiff's RFC. The ALJ also considered the numerous inconsistencies in the record and Plaintiff's testimony, including the distance she can walk and the amount of time she is

---

[4] While not binding precedent, unpublished opinions of the Eleventh Circuit Court of Appeals may be cited as persuasive authority. 11th Cir. R. 36-2.

able to stand and sit.  Plaintiff told Dr. Shefsky that she could walk less than half a block, stand for five or ten minutes, and sit for five or ten minutes; she then testified at the hearing that she could walk for ten minutes, stand for fifteen to twenty minutes, and sit for five to ten minutes.  Plaintiff also indicated that prior to the month preceding the hearing she could lift ten to fifteen pounds, but at the hearing she testified her doctor advised her not to lift more than five pounds. (T 36, 58-59, 330)

Additionally, the ALJ considered that, while Plaintiff alleged disability beginning in 1975, she did not file her application until 2009, and Plaintiff had a history of unexplained low earnings, (working even after her alleged onset date), indicating that her exertional symptoms were not as severe as Plaintiff indicated for some of the time. (T 36-37, 49-50, 134, 140)  Further, although Plaintiff originally alleged asthma, depression, and arthritis in her back as impairments, at the hearing she also complained of numbness in her shoulders, a torn cornea in her eye, and concentration problems related to reading and writing. (T 36-39, 58-59, 66-68, 150, 333)

The ALJ also noted that Plaintiff's subjective evaluation of pain did not appear to coincide with her demeanor or abilities. For example, though Plaintiff indicated to the mental health consultative examiner that her pain level was a nine out of ten, she was still able to converse calmly with the examiner. Even though Plaintiff told Dr. Shefsky her pain was an eight out of ten, Dr. Shefsky indicated that she did not appear to be in acute distress.  At the hearing, Plaintiff claimed the pain in her lower back was constantly a seven out of ten and the pain in her neck was a six out of ten. (T 37, 65, 326, 330-31)  Further, Plaintiff complained about daily migraine headaches that were severe about three times each week, yet Plaintiff did not mention them at the consultative examination with Dr. Shefsky. (T 34, 68)

The ALJ also questioned Plaintiff's use of a walker, as it was not prescribed by any physician.  Plaintiff did not use a walker or other assistive device at the examination by the mental health consultative examiner, who noted that her posture was normal, and that her stance, gait, and ambulation were "unremarkable," yet Plaintiff appeared with a walker and antalgic gait only one month later when examined by Dr. Shefesky. (T 38, 326, 331)

Overall, the ALJ acknowledged that the record shows Plaintiff has impairments, but not at the level of severity alleged by Plaintiff. (T 37)  The Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case.  As the ALJ clearly articulated reasons for not fully crediting Plaintiff's allegations and substantial evidence supports the ALJ's credibility determination, this issue does not entitle Plaintiff to relief. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**D.**     Plaintiff asserts that the testimony of the Vocational Expert ("VE") did not support the ALJ's conclusion that Plaintiff is capable of performing past relevant work.  Plaintiff asserts that the VE actually stated that a person with Plaintiff's RFC could not perform the work of kennel attendant at the light level.

At the hearing, the VE identified Plaintiff's past relevant work as a kennel attendant, a job that requires a medium exertional level.  However, Plaintiff testified that others lifted the dogs for her, so the VE stated that she actually performed the work at a light level. (T 55-58, 72-74) The ALJ then posed a hypothetical question to the VE that included an individual with a high school education; light level exertional capacity with standing and walking limited to two to four hours each in an eight hour day; occasional standing on an uneven surface, kneeling, and crawling; no climbing long ladders, scaffolds, ropes, or at open heights; avoiding extreme temperatures; and not involved in frequent reading or writing.  The VE responded that Plaintiff could not perform her past

14

relevant work as a kennel attendant as she actually performed it because some days "she could only do two hours of each per day, other days she might do four, but we don't know which day she would be able to do it."  (T 76)

The VE additionally opined that if Plaintiff's RFC restricted her ability to stand or walk to two to four hours total per day, the only other work Plaintiff could perform would be at the sedentary level. (T 74-77)  However, the ALJ did not ask for and the VE did not provide information about what those hypothetical jobs would be.

There was no ambiguity in the ALJ's hypothetical or the VE's response which might suggest remand for clarification.  Instead of saying that Plaintiff could stand and walk each up to four hours a day, the ALJ limited her RFC to "standing and walking limited to two to four hours total each in an eight-hour day." (T 74)

As the RFC proposed by the ALJ restricted Plaintiff's ability to stand or walk to two to four hours total in an eight hour day and the VE indicated that such limitation would keep Plaintiff from being able to perform her past relevant work as a kennel attendant as she actually performed it, remand is required on this issue to determine at step five of the sequential review process whether there are any other jobs which Plaintiff can perform which constitute substantial gainful activity.[5]

### III. Conclusion

In recommending remand for further fact-finding on the issues identified above, this Court expresses no views as to the ultimate outcome.  On remand, each side shall be afforded an

---

[5]  Plaintiff additionally contends that the ALJ erred by failing to apply the Grids and find Plaintiff disabled at step five of the sequential evaluation process.  As remand is required on other grounds, it is unnecessary to address Plaintiff's alternative argument that the ALJ should have applied the Grids to find Plaintiff disabled. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986).

15

opportunity to introduce additional evidence.  The purposes of the Social Security Act will best be served by further consideration of Plaintiff's claims upon a more fully developed record.  See generally Epps v. Harris, 624 F.2d 1267, 1275 (5th Cir. 1980).

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner is be **REVERSED** and the case be **REMANDED** for further proceedings consistent with the forgoing; and

(2)     The Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).  The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. § 406(b) must be filed no later than thirty (30) days after the date of the Social Security letter sent to the plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney fees.  See In re Procedures for Applying for Attorney Fees under 42 U.S.C. §§ 406(b) and 1383(d)(2), No. 6:12-mc-124-CRL-22 (M.D. Fla. Nov. 13, 2012).

**DONE AND ORDERED** in Tampa, Florida on this 6th day of January, 2014.

ELIZABETH A JENKINS
United States Magistrate Judge